Filed 1/18/24  P. v. Corona CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F085821 |
| Plaintiff and Respondent, | (Kern Super. Ct. No. BF161200C) |
| v. | **ORDER MODIFYING OPINION AND DENYING REHEARING** |
| ALONSO CORONA, | |
| Defendant and Appellant. | **[NO CHANGE IN JUDGMENT]** |

**THE COURT:**

It is ordered that the opinion filed herein on January 10, 2024, be modified as follows:

1.     In footnote 6 on page 18, we add the following at the start of the footnote before the word "Likewise[.]"

This record conclusively demonstrates that defendant held his own intent to kill and malice was not imputed to him.  Thus, there is no reasonable probability he would obtain a more favorable result if this matter was remanded for further proceedings regarding his petition for resentencing.  (See *People v. Watson* (1956) 46 Cal.2d 818, 836 [articulating standard of review for prejudice involving error of state law].)  In addition, and to the extent a federal constitutional issue exists, we can declare beyond a reasonable doubt that the denial of the petition at the prima facie stage was harmless.  (See *Chapman v. California* (1967) 386 U.S. 18, 24 [articulating standard of review for prejudice involving error under federal Constitution].)  We therefore affirm the denial of the petition for resentencing.

Except for the modification set forth herein, the opinion previously filed remains unchanged. The modification does not alter the judgment. Defendant's petition for rehearing is denied.


POOCHIGIAN, J.

WE CONCUR:


LEVY, Acting P. J.


MEEHAN, J.

Filed 1/10/24  P. v. Corona CA5 (unmodified opinion)

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ALONSO CORONA,<br><br>Defendant and Appellant. | F085821<br><br>(Kern Super. Ct. No. BF161200C)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Charles R. Brehmer and John R. Brownlee, Judges.\*

Sylvia W. Beckham, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Amanda D. Cary, Erin Doering, and William K. Kim, Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\* Judge Brownlee presided over the November 1, 2022, Penal Code section 1172.6 resentencing motion; Judge Brehmer presided over the February 27, 2023, motion to strike gang-related enhancements pursuant to Assembly Bill No. 333 (2021–2022 Reg. Sess).

## INTRODUCTION

In 2017, a jury convicted appellant and defendant Alonso Corona of first degree premeditated murder for the shooting death of Victor Anaya (Pen. Code, § 187, subd. (a);[1] count 1). The jury also convicted defendant of attempted premeditated murder involving another victim, David Anaya,[2] stemming from the same incident (§§ 664, 187, subd. (a); count 2). The jury found true that defendant committed these crimes to benefit a criminal street gang (§ 186.22, subd. (b)(1)), and that, during these offenses, at least one principal intentionally and personally discharged and personally used a firearm that proximately caused great bodily injury or death (§ 12022.53, subds. (d), (e)(1)). The jury, however, did not find true that defendant personally inflicted great bodily injury upon David during the attempted murder.

Stemming from the same incident as counts 1 and 2, the jury convicted defendant of shooting at an inhabited dwelling (§ 246; count 3) and conspiracy to commit a crime (§ 182, subd. (a)(1); count 4). In these counts, the jury also found true gang enhancements (§ 186.22, subd. (b)(1)). In count 3 (shooting at an inhabited dwelling), the jury determined that at least one principal intentionally and personally discharged a firearm (§ 12022.53, subds. (c), (e)(1)). In count 4 (conspiracy), the jury determined that defendant used a firearm (§ 12022.5, subd. (a)). Defendant was sentenced to an aggregate prison term of 82 years to life.

In 2019, we issued an unpublished opinion in which we reversed the first degree murder conviction in count 1 because of prejudicial instructional error. We agreed with defendant it was possible the jury had improperly relied on the natural and probable consequences doctrine to find him guilty in count 1 as an aider and abettor. We could not declare the error harmless beyond a reasonable doubt regarding a conviction for murder

---

[1] All further undesignated statutory references are to the Penal Code unless otherwise noted.

[2] Because Victor and David share the same last name, we will refer to them by their first names to avoid confusion.

2.

in the first degree. We modified the conviction in count 1 to second degree murder but gave the People the opportunity to retry the premeditation and deliberation allegation. In all other respects, we affirmed the judgment. (*People v. Corona* (Sept. 18, 2019, F075515), [opn. mod. Oct. 16, 2019] [nonpub. opn].)

The California Supreme Court accepted review of this matter, and, on December 22, 2021, it directed us to vacate our prior opinion and reconsider the cause in light of Senate Bill No. 775 (2020–2021 Reg. Sess.; Stats. 2021, ch. 551; Senate Bill 775).

On February 1, 2022, we vacated our opinion and requested supplemental briefing from the parties. Following remand from the high court, the parties agreed that our prior disposition in count 1 remained correct and the murder conviction should be reduced to second degree. Regarding the attempted premeditated murder conviction in count 2, we agreed with defendant that reversal was required in light of Senate Bill 775. An accomplice may no longer be convicted of attempted murder based on the natural and probable consequences doctrine. (*People v. Sanchez* (2022) 75 Cal.App.5th 191, 196.) We could not declare beyond a reasonable doubt that the jury convicted defendant in count 2 based on a legally valid theory.

On April 26, 2022, we issued an unpublished opinion in which we modified the conviction in count 1 to second degree murder but gave the People the opportunity to retry the premeditation and deliberation allegation. We reversed the conviction in count 2 (attempted premeditated murder) but gave the People the opportunity to retry this charge. In all other respects, we affirmed the judgment. (*People v. Corona* (April 26, 2022, F075515 [nonpub. opn.]).)

This matter was remanded to the trial court. There, defendant raised the issue of Assembly Bill No. 333 (2021–2022 Reg. Sess.; Assembly Bill 333), which went into effect on January 1, 2022. This altered the requirements to prove gang-related enhancements. In our prior opinion, the parties did not address Assembly Bill 333. The trial court declined to take further action regarding Assembly Bill 333 or to relitigate the

3.

gang-related enhancements. The court believed the appellate court should decide whether Assembly Bill 333 applied in this matter.

After this matter was remanded below, defendant also petitioned the trial court for resentencing (§ 1172.6), contending, in part, that he could no longer be convicted of second degree murder in count 1 because the jury had been instructed on the natural and probable consequences doctrine. The trial court denied the petition without prejudice.

The prosecution did not retry defendant. In February 2023, the trial court resentenced defendant to an aggregate indeterminate term of 40 years. This represented a sentence of 15 years to life for second degree murder (count 1), along with a consecutive 25 years to life for the firearm enhancement (§ 12022.53, subds. (d) & (e)(1)).

In the present appeal, respondent concedes that defendant is entitled to the retroactive benefits of Assembly Bill 333. Respondent further concedes that the predicate offenses introduced in defendant's trial do not meet the current requirements to establish the gang-related enhancements (§ 186.22, subd. (b)(1)). Respondent asserts that we should reverse the jury's true findings for the gang-related enhancements, including the gang-related firearm enhancements found true under section 12022.53, subdivision (e)(1). Respondent contends we should remand this matter to afford the People an opportunity to retry these enhancement allegations, and for defendant to be resentenced.

As we explain below, respondent's concessions are proper. We will vacate defendant's sentence, and we will reverse the jury's true findings regarding the gang-related enhancements (§ 186.22, subd. (b)(1)), including the firearm enhancements found true under section 12022.53, subdivision (e)(1). The People shall have an opportunity to retry these allegations.

We reject defendant's remaining arguments. Reversal of the second degree murder conviction is unwarranted, and the trial court did not err in denying the petition for resentencing. Although the jury was instructed on the natural and probable

4.

consequences doctrine, we can declare that this was harmless beyond a reasonable doubt regarding the modified conviction for second degree murder. The evidence overwhelmingly demonstrates that defendant held his own intent to kill, and malice was not imputed to him. All rational jurors who may have found defendant guilty based on that now invalid theory, and made the factual findings reflected in the verdict, would have unanimously found defendant guilty based on a valid theory. We remand for further proceedings but otherwise affirm the judgment, including the modified conviction for second degree murder.

## **BACKGROUND**

We summarize the material trial facts. We provide additional facts later in this opinion when relevant to specific issues raised on appeal.[3]

## I.     The Shootings at the House Party

The events in question transpired at a house party in Kern County. Upwards of 75 to 100 people attended the party throughout the night and into the early morning hours of August 15, 2015. Defendant was a gang member when these events occurred. He belonged to a gang known as CSB, which stood for either Can't Stop Banging or Can't Stop Balling.

The prosecution established that defendant attended the house party. In addition to eyewitness testimony confirming defendant's presence, defendant's deoxyribonucleic acid (DNA) was located on an empty beer bottle recovered at that house after these events. Defendant arrived at the party around midnight with about 10 other CSB members. The group had not been invited to the party, but someone had received a text message about it. That night, defendant wore a white T-shirt and a blue "L.A." hat.

Jose Montoya attended the party with defendant. Montoya was the younger brother of defendant's girlfriend. Defendant referred to Montoya as his brother-in-law.

---

[3] On May 26, 2023, this court took judicial notice of the record from the prior appeal in appellate case number F075515.

The trial evidence established that defendant was armed when he attended this party. A CSB gang member, Collin Alvarado, testified that he saw both defendant and Montoya each with handguns in the evening before this party started. Other witnesses saw defendant at the party in possession of a gun.

As the party began to wind down in the early morning hours, the CSB members were asked to leave. The situation became tense. Some of the CSB members appeared upset and they did not readily agree to leave. Eventually, the CSB group moved to the front yard.

In the front yard, more words were exchanged between the CSB group and the males escorting them out of the house. There were about 15 males all together. A CSB member said, "We're not going to leave until this gets resolved." Victor, the murder victim, initially tried to calm down the situation. A CSB member was heard saying, "You think we're not going to do anything?" A member in the CSB group also said something like, "I'm going to show you what I'm going to do." Defendant was present in the front yard when these exchanges occurred. As the situation became tense, a CSB gang member said, "We are just going to f[**]k these fools up." Defendant appeared mad. He said things like, "I don't give a f[**]k if this is your house." A fellow gang member told defendant something like, "[W]hatever you want to do, I'm with you." A fist fight ensued. During the fight, multiple witnesses heard two separate volleys of shots. The first volley involved two shots. The second volley occurred about a minute later, and it involved anywhere from three to five shots. The witnesses described two shooters, one wearing a white shirt and blue hat. The second shooter wore dark clothing. The shots originated from the CSB group.[4]

At trial, the prosecution established that defendant fired the first volley of two shots. David, the victim of the attempted murder, testified that he saw defendant draw a

---

[4] Neither Victor nor David, the two shooting victims, were armed when these events occurred.

black handgun, point it at Victor, and fire two shots. David ran at defendant and began wrestling him for the gun. They ended up wrestling on the hood of a car. While they struggled, defendant slid his weapon across the hood to another person. David eventually broke free and ran towards the house. David reached the front door and, as he opened it, he heard multiple shots. He was struck once in his mid-back. David woke in the hospital. While hospitalized, he spoke with detectives. He identified defendant in a photographic lineup as the person who fired two shots at Victor. David was 70 percent certain of his selection when he made it. At trial, David identified defendant as the suspect who shot twice at Victor. He said that Victor's shooter had worn a white shirt and a blue hat.

Another witness, J.L., saw a CSB member push Victor, who pushed back. The CSB member drew a firearm from his waistband, and Victor began struggling with this person over the firearm. J.L. heard two shots, but he did not see who fired those shots. After these events, J.L. selected defendant's photograph as the person he saw draw a firearm and struggle with Victor. At the time he made this selection, J.L. was 75 percent certain. At trial, however, J.L. said he did not recognize defendant in court.

A fellow gang member, Alvarado, testified that he was involved in the fight. During the brawl, he heard two shots fired. He then saw defendant running away with a "pistol."

## II. Law Enforcement's Investigation

Police officers were dispatched to the house party at about 2:12 a.m. on August 15, 2015. Victor suffered two gunshot wounds. One shot went through his torso but did not pierce any vital organs. The other bullet pierced an artery, which caused death within minutes due to internal hemorrhaging.

David underwent surgery and he was hospitalized for multiple weeks. At the time of his trial testimony, he was still disabled.

7.

Fresh bullet strikes were found on vehicles parked in front of the residence. Bullet strikes were also seen near the residence's front door, and on its wall. At trial, a police sergeant opined that the multiple shots had been fired from "two different positions." Police recovered two 9-millimeter shell casings in the front yard. Later testing confirmed that the two 9-millimeter casings had been fired from the same weapon. In addition, fragments of a projectile were recovered from Victor's body during his autopsy. Testing suggested that the projectile removed from Victor's body came from a .38- or a .357-caliber firearm.

During its investigation, police learned from a source that defendant and Montoya had been responsible for this shooting. This information had originated from defendant's brother. About four days after this shooting, an arrest warrant was issued for Montoya for the charge of first degree murder.[5]

## III. The Defense Evidence

Defendant's mother and his girlfriend (the mother of his child) testified on his behalf. They collectively asserted that defendant was home with them on the night in question. Defendant's birthday was August 14, and they had stayed home to celebrate. They claimed that the following day, defendant was home in the morning, but he then disappeared.

The parties stipulated that defendant's fingerprints were not located at the shooting scene.

## DISCUSSION

## I. Defendant's Modified Second Degree Murder Conviction is Affirmed

Effective January 1, 2019, the Legislature passed Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437). This amended both the felony-murder rule and the natural and probable consequences doctrine to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a

---

[5] Montoya was not a party in this prosecution.

major participant in an underlying felony who acted with reckless indifference to human life. (*People v. Strong* (2022) 13 Cal.5th 698, 707–708 (*Strong*).) Senate Bill 1437 eliminated the natural and probable consequences doctrine as a basis to establish liability for first and second degree murder. (*People v. Garrison* (2021) 73 Cal.App.5th 735, 742.)

Senate Bill 1437 added former section 1170.95, now renumbered as section 1172.6. This created a procedural mechanism for those convicted under the prior law to seek retroactive relief. (§ 1172.6, subd. (a); *Strong*, *supra*, 13 Cal.5th at p. 708; *People v. Lewis* (2021) 11 Cal.5th 952, 957.)

## A. *Our Prior Opinions Did Not Address the Merits of Senate Bill 1437*

In our prior opinions, we addressed the degree of murder which could be imposed in count 1 following instructional error which had invited the jury to find defendant guilty of first degree murder based on the natural and probable consequences doctrine. However, we did not directly analyze the validity of this murder conviction based on Senate Bill 1437. In our unpublished opinion filed in 2019, we took the position under then prevailing authority that defendant could not seek relief under Senate Bill 1437 on direct appeal, but he had to pursue such relief in the trial court. (*People v. Corona, supra,* F075515.) Before we issued our opinion in 2022, the parties did not address whether the second degree murder conviction had to be reversed in light of Senate Bill 1437. Instead, the parties agreed that our prior disposition in count 1 remained correct and the murder conviction should be reduced to second degree. We accepted the parties' position, noting that "overwhelming evidence demonstrated defendant's malice in count 1. He went to the party with a loaded gun, and multiple witnesses identified him as Victor's initial attacker. No evidence suggested that Victor was armed, but multiple witnesses saw defendant draw his weapon and fire it twice at Victor. There was, however, a second shooter and it was unclear who fired the fatal shots." (*People v. Corona, supra,* F075515, at p. 16.)

After this matter was remanded to the trial court in 2022, defendant challenged the validity of his second degree murder conviction based on Senate Bill 1437. He petitioned the court to resentence him pursuant to section 1172.6. In relevant part, defendant claimed his second degree murder conviction was not legally valid because the jury had been instructed on the natural and probable consequences doctrine.

The trial court did not want to proceed outside the scope of the remittitur. It denied without prejudice the resentencing petition under section 1172.6. The prosecution declined to retry defendant regarding the premeditation allegation in count 1 or the attempted murder charge in count 2. The court modified the conviction in count 1 to second degree murder, and defendant was resentenced in February 2023. The present appeal followed.

**B.** ***Defendant's Arguments on Appeal***

In two related claims on appeal, defendant argues that his modified conviction for second degree murder in count 1 must be reversed. First, he asserts that this record does not demonstrate beyond a reasonable doubt that a jury would have found him unanimously guilty of murder under a legally valid theory. He contends that, based on the various instructions given, it is possible the jury convicted him of murder by imputing malice to him through the natural and probable consequences doctrine. He argues that the jury could have found him guilty of second degree murder by imputing the malice of the actual shooter to him, while he (defendant) was only aiding and abetting the shooting at the inhabited dwelling while participating in a conspiracy to commit unlawful assembly. Defendant asks us to reverse his murder conviction and remand this matter for a possible new trial on that charge.

In the alternative, defendant maintains that the trial court erred in denying his petition for resentencing. He contends that, if we do not reverse his murder conviction on direct appeal, we should remand this matter with instructions for the trial court to issue an

10.

order to show cause and hold an evidentiary hearing regarding the validity of the murder conviction.

### C.  *The Law Regarding Malice*

Murder requires malice aforethought, which is either express or implied.  Express malice is an intent to kill.  (§ 187, subd. (a); § 188, subd. (a)(1).)  Implied malice occurs when a perpetrator (1) intentionally commits an act (or fails to act); (2) the natural and probable consequences of the act were dangerous to human life; (3) at the time he acted, the perpetrator knew his act was dangerous to human life; and (4) the perpetrator deliberately acted (or failed to act) with conscious disregard for human life.  (*People v. Soto* (2018) 4 Cal.5th 968, 974; CALCRIM No. 520.)  Following Senate Bill 1437, malice may no longer be imputed to a person based solely on his participation in a crime.  (*People v. Fisher* (2023) 95 Cal.App.5th 1022, 1027.)

"In general, to establish liability for murder under the theory of direct aiding and abetting, 'the prosecution must show that the defendant aided or encouraged the commission of the murder with knowledge of the unlawful purpose of the perpetrator and with the intent or purpose of committing, encouraging, or facilitating its commission.' "  (*People v. Curiel* (2023) 15 Cal.5th 433, 466.)  Our Supreme Court has clarified that, following elimination of the natural and probable consequences doctrine, a person may still be liable for implied malice murder as an aider and abettor.  (*People v. Reyes* (2023) 14 Cal.5th 981, 990.)  An aider and abettor may be liable for murder under a theory of implied malice where the aider and abettor aids in the commission of a life-endangering act, with " 'knowledge that the perpetrator intended to commit the act, intent to aid the perpetrator in the commission of the act, knowledge that the act is dangerous to human life, and acting in conscious disregard for human life.' "  (*Id*. at p. 991, italics omitted.)

11.

**D.** *The Jury Was Presented with a Now Invalid Theory of Liability for Murder*

We agree with defendant that, in count 1, the jury was presented with a theory of liability for murder that is now invalid. In part, the jury was instructed that it could find defendant guilty of murder under the natural and probable consequences doctrine as an aider and abettor. The prosecutor argued to the jury that defendant had conspired with other members of his gang to assemble unlawfully at the house party. According to the prosecutor, the natural and probable consequences flowing from that unlawful assembly was the deadly shooting that occurred.

As we noted in our prior opinion, the prosecutor admitted to the jury during closing argument that it was "not clear who fired the fatal shot." Victor was shot twice, and either defendant shot him twice, or Montoya shot him twice, or they each shot Victor once. However, the prosecutor also asserted that defendant had held his own intent to kill because he had brought a gun, and he was prepared to use it. According to the prosecutor, multiple witnesses testified that defendant had pointed a gun at Victor, and the evidence supported three different theories of guilt in count 1. Either defendant was the direct perpetrator of Victor's murder, or defendant aided and abetted the actual shooter, or defendant was "responsible for the natural and probable consequence of Victor's shooting." The prosecutor, however, informed the jury that defendant could only be guilty of second degree murder if he was guilty under the natural and probable consequences doctrine. (*People v. Corona, supra,* F075515).)

**E.** *We Have Jurisdiction to Address Senate Bill 1437 and the Validity of the Murder Conviction in Count 1*

Our prior opinions did not analyze the validity of defendant's murder conviction specifically in light of Senate Bill 1437. As such, we agree with defendant that our prior opinions do not bar consideration of his present assertions in this appeal regarding the application of Senate Bill 1437. Moreover, defendant raised Senate Bill 1437 in the trial court, which denied the petition for resentencing. Thus, we have jurisdiction to address

12.

the validity of the trial court's order.  Finally, we have jurisdiction to review on direct appeal the validity of the murder conviction in count 1 following the changes brought by Senate Bill 1437.  (See § 1172.6, subd. (g) [a defendant may challenge on direct appeal the validity of a murder conviction].)  Consequently, we will review the merits of appellant's assertions regarding Senate Bill 1437 in relationship to his modified conviction of second degree murder.  Because a theory of liability was presented to the jury which has subsequently been rendered invalid, the issue before us is whether prejudice occurred.

### F. *It is Beyond a Reasonable Doubt that Defendant Did Not Suffer Prejudice*

In our 2019 opinion in this matter, we noted that the trial court had informed the jury that defendant was being prosecuted for first degree murder under three theories: (1) as a perpetrator; (2) under a theory of aiding and abetting; and (3) based on the conspiracy alleged in count 4.  (*People v. Corona, supra,* F075515.)

In our 2019 opinion, we held that the court's instructions had erroneously invited the jury to find defendant guilty of first degree murder if he was a member of a conspiracy to unlawfully assemble and a murder (or a lesser included offense) occurred as a natural and probable consequence of that conspiracy.  (*People v. Corona, supra,* F075515.)  When we issued our prior opinions in this matter, our high court used the following standard of review when a trial court instructs a jury on multiple theories of guilt and one theory is legally incorrect.  Reversal is required unless the reviewing court can declare beyond a reasonable doubt that the jury based its verdict on a legally valid theory.  (*People v. Chiu* (2014) 59 Cal.4th 155, 167, superseded by statute as stated in *People v. Gentile* (2020) 10 Cal.5th 830, 848–849.)  Based on this standard of review, we agreed with defendant that the instructional error was prejudicial regarding his conviction for first degree murder.  We could not declare beyond a reasonable doubt that the jury

based the first degree murder conviction on a legally valid theory. As a result, we reduced the conviction to second degree murder.

Subsequently, however, our high court has articulated a slightly different standard of review. When multiple theories of liability are presented, one of which is incorrect, reversal is required unless the reviewing court determines that the error was harmless beyond a reasonable doubt. (*In re Lopez* (2023) 14 Cal.5th 562, 592.) To reach this determination, the reviewing court must examine all the evidence and consider all relevant circumstances. (*Ibid.*) The error may be deemed harmless if no reasonable jury could have failed to find the facts necessary to support a valid theory. (*Ibid.*) "Indications that the jury considered an invalid theory, without more, do not undermine that conclusion." (*Ibid.*) The issue is whether a rational jury would have found the defendant guilty based on a valid theory if the jury had been properly instructed. (*Id.* at p. 584.) If the reviewing court determines beyond a reasonable doubt that any rational jury would have made the additional findings, based on the jury's actual verdict and the evidence at trial, the error is harmless because the presentation of the invalid theory to the jury made no difference. (*Id.* at p. 589.)

Defendant acknowledges that the standard of review articulated in *In re Lopez* is the proper one to apply here when analyzing whether his murder conviction must be reversed because of Senate Bill 1437. Under this standard, he contends he suffered prejudice. He argues it is possible the jury may have imputed malice to him. He maintains it is impossible to declare beyond a reasonable doubt that the use of the natural and probable consequences doctrine was harmless.

We reject defendant's arguments. This record overwhelmingly demonstrates defendant's own malice. He attended the house party which culminated in the fatal shooting. Eyewitness testimony and defendant's DNA place him at this residence. He was with fellow gang members when they appeared at the party uninvited. Defendant attended this party with Montoya, whom defendant referred to as his brother-in-law.

14.

Both defendant and Montoya were armed with handguns.  Defendant and other members of his gang got into a verbal altercation with the victims.  Defendant was identified as a person who got into a physical fight with Victor.  Witnesses saw defendant aim a gun at Victor and fire twice.  At least one other shooter, likely Montoya, also fired a gun during this melee.  No evidence suggested that Victor was armed.  When the totality of the evidence is considered, it is overwhelmingly apparent that malice was not imputed to defendant; instead, he expressed his own intent to kill.

Our Supreme Court makes it clear that a defendant's liability for murder is determined by his own malice along with proximate causation – not direct or actual causation.  (*People v. Sanchez* (2001) 26 Cal.4th 834, 845.)  When it is impossible to determine who fired a fatal shot, i.e., when direct or actual causation cannot be established, that does not undermine the validity of a murder conviction if it is shown beyond a reasonable doubt that the defendant's conduct was a substantial concurrent cause of the victim's death.  (*Ibid*.)

In 2023, our high court reaffirmed this rule, holding that the conduct of a participant in a gun battle who did not fire the fatal shot may contribute substantially and concurrently to – and be a proximate cause of – the victim's death.  (*People v. Carney* (2023) 14 Cal.5th 1130, 1137, citing *People v. Sanchez, supra*, 26 Cal.4th at pp. 845– 849.)  Senate Bill 1437 does not impact this rule because proximate causation does not concern the imputed malice theory of criminal liability that is part of the natural and probable consequences doctrine.  (*People v. Carney,* at pp. 1145–1146.)

In this matter, it is unknown who delivered the fatal shots that resulted in Victor's death.  As the prosecutor noted during closing argument, Victor was shot twice, and either defendant shot him twice, or Montoya shot him twice, or they each shot Victor once.  The prosecutor asserted that defendant had held his own intent to kill because he had pointed a gun at Victor.  According to the prosecutor, defendant was guilty of murder under three alternative theories, either as a direct perpetrator, or as an aider and abettor,

or defendant was "responsible for the natural and probable consequence of Victor's shooting."

Defendant's jury was instructed that malice aforethought is a mental state that must be formed before the act that caused the death is committed. The jurors were told that an act causes death if the death was a direct, natural and probable consequence of the act, and the death would not have happened without the act. "A natural and probable consequence is one that a reasonable person would know is likely to happen if nothing unusual intervenes." The jurors were told to consider all the circumstances established by the evidence in deciding whether a consequence was natural and probable. The jurors were also instructed that there may be more than one cause of death. An act causes death only if it is a substantial factor in causing death. A substantial factor must be more than trivial or remote, but it does not need to be the only factor that causes the death.

This record overwhelmingly demonstrates beyond a reasonable doubt that defendant's conduct was a substantial factor in Victor's death. It was defendant who initiated the physical confrontation with Victor. It was defendant who initially aimed a handgun at Victor and fired two shots. Although it is impossible to determine who delivered the fatal shots in this matter, i.e., direct or actual causation cannot be established, that does not undermine the validity of defendant's murder conviction. Instead, the evidence demonstrates beyond a reasonable doubt that defendant's conduct was, at a minimum, a substantial concurrent cause of Victor's death. Accordingly, it is overwhelmingly apparent it is appropriate to hold defendant liable for murder.

Defendant argues that one or more jurors may have not found the eyewitness testimony credible. He also asserts that, because he was 21 years old when these crimes occurred, a rational jury could have held reasonable doubt that he was able to subjectively hold a reckless indifference to human life due to his "youth" and lack of maturity. He cites various opinions which articulate how younger people are more impetuous and likely to not understand the ramifications of their actions.

16.

Defendant's arguments are unpersuasive. Nothing in this record demonstrates or even reasonably suggests defendant would have been unable to have a subjective awareness that his conduct posed a conscious disregard for human life. In any event, the trial evidence overwhelmingly established defendant's express intent to kill. There is no reasonable basis to conclude that any juror would have imputed malice to defendant.

Further, nothing reasonably indicates the jurors would have discredited the eyewitness accounts. The jury convicted defendant in count 4 of conspiracy to commit a crime. The jury found true that defendant used a firearm during the commission of this offense (§ 12022.5, subd. (a)). The court instructed the jurors that, to find this firearm enhancement allegation true, the prosecution was required to prove beyond a reasonable doubt that defendant had personally used a firearm. Based on this true finding, it is abundantly apparent that the jurors credited the eyewitness accounts that defendant personally used a firearm.

Finally, during closing arguments, the prosecutor asserted, in part, that defendant was guilty of murder if he had intended for the second shooter to kill or injure another person. The prosecutor argued that both defendant and Montoya came to the party armed with firearms, and they were both prepared to use them. The prosecutor contended that this showed that they were both mentally prepared to kill. According to the prosecutor, defendant was guilty of first degree murder because defendant either (1) held his own intent to kill, and he premeditated and deliberated this murder; or (2) he aided and abetted this killing while holding his own premeditation. The prosecutor repeatedly emphasized to the jurors that, if they found defendant liable for murder under the natural and probable consequences doctrine, then they could only return a verdict of second degree murder.

The jury found defendant guilty of first degree murder for Victor's death. As such, there is a basis in this record to conclude that the jurors relied on a valid legal theory to find defendant guilty of murder. That is, the prosecutor repeatedly asserted that defendant was only guilty of second degree murder if the jurors relied on the natural and

probable consequences doctrine.  The jurors, however, convicted defendant of first degree murder.

After reviewing all the evidence and considering all relevant circumstances, we reject defendant's various assertions.  The use of the natural and probable consequences doctrine in this trial did not make a difference in establishing defendant's liability for the modified conviction of second degree murder.  Defendant expressed his own intent to kill, and malice was not imputed to him.  Defendant was a direct perpetrator who fired at Victor.  Defendant either delivered the fatal shots or his conduct was a substantial concurrent cause of Victor's death.  All rational jurors who may have found defendant guilty based on a now invalid theory, and made the factual findings reflected in the verdict, would have unanimously found defendant guilty of second degree murder based on a valid theory.  No juror could have had reasonable doubt regarding the findings necessary to convict defendant on a valid theory.  (See *In re Lopez, supra,* 14 Cal.5th at p. 568.)  Thus, the use of the natural and probable consequences doctrine was harmless in count 1 regarding defendant's modified conviction for second degree murder.  Accordingly, we reject defendant's assertions that his second degree murder conviction must be reversed or that the trial court erred in denying his petition for resentencing.[6]

## II.    We Reverse the Jury's True Findings Regarding all Gang-Related Enhancement Allegations

On January 1, 2022, Assembly Bill 333 went into effect.  In relevant part, this bill added new elements to establish gang enhancements under section 186.22.  (*People v. Tran* (2022) 13 Cal.5th 1169, 1207 (*Tran*).)  To establish a pattern of criminal gang activity, this bill now requires proof that both predicate and currently charged offenses benefited a gang in a way that was not merely reputational.  (§ 186.22, subd. (g); *Tran,* at p. 1207.)

---

[6] Likewise, any instructional error regarding based on the now invalid theory under the natural and probable consequences doctrine is harmless beyond a reasonable doubt regarding the modified conviction of second degree murder in count 1.

In our prior opinions, the parties did not address Assembly Bill 333, which became effective a little over three months before our most recent opinion was filed. Instead, the parties focused on the issue of defendant's liability for murder and attempted murder within the scope of the high court's remittitur. Following remand to the trial court, however, defendant asserted that his gang-related enhancements must be reversed based on this new legislation. The trial court declined to address Assembly Bill 333, concluding this issue was beyond the scope of the remittitur from this court. However, the trial court expressed its belief that the gang enhancements imposed against defendant were likely not in compliance with the current law. The trial court expected that this court would provide direction on this issue.

In the present matter, respondent concedes that defendant should receive the benefits from this change in law because this matter has not been reduced to a final judgment. We agree. Assembly Bill 333 applies retroactively to any criminal matter that is not yet final on appeal. (*Tran, supra*, 13 Cal.5th at pp. 1206–1207, citing *In re Estrada* (1965) 63 Cal.2d 740.) Because this matter is still pending on direct appeal, defendant is entitled to the ameliorative benefits of Assembly Bill 333.

Respondent further concedes that the jury's true findings regarding all gang-related enhancements must be reversed, and this matter should be remanded to afford the People an opportunity to retry those enhancement allegations. Respondent notes that no evidence below established that the predicate offenses introduced in defendant's trial established anything other than a reputational benefit for defendant's gang. We agree.

Two predicate offenses were introduced in this trial to establish a pattern of criminal gang activity. One predicate offense involved a residential burglary and the other involved the possession of a controlled substance for sales. The parties agree, as do we, that the jury never received testimony regarding how these predicate offenses provided a benefit to defendant's gang that was more than reputational. Moreover, the court instructed the jurors that the predicate offenses needed to establish a pattern of

19.

criminal gang activity "need not be gang related." The court's instruction under the prior law directly contradicts the new requirements that predicate offenses commonly benefit the gang, and the common benefit must be more than reputational. (See *People v. Cooper* (2023) 14 Cal.5th 735, 744.)

Based on the foregoing, we agree with the parties that the jury's true findings regarding the gang-related enhancements (§ 186.22, subd. (b)(1)) must be vacated. Likewise, the true findings regarding the firearm enhancements in counts 1 and 3, which were gang-related (§ 12022.53, subds. (c), (d) & (e)(1)), must also be vacated. The People shall have the opportunity to retry these gang-related enhancements in compliance with the current law. (*People v. E.H.* (2022) 75 Cal.App.5th 467, 481.) We vacate defendant's sentence and remand this matter for further proceedings.

## III. An Unauthorized Sentence Was Imposed in Count 3

Defendant contends that an unauthorized sentence was imposed in count 3. Respondent concedes that sentencing error occurred.

In count 3, the jury found defendant guilty of discharging a firearm at an inhabited dwelling (§ 246). The jury found true that defendant committed this offense to benefit his gang (§ 186.22, subd. (b)(1)). The jury also found true that, in committing this crime, a principal personally and intentionally discharged a firearm (§ 12022.53, subds. (c) & (e)(1)).

The crime of discharging a firearm at an inhabited dwelling carries a sentencing triad of three, five or seven years. (§ 246.) However, when defendant was resentenced in this matter in 2023, the court imposed in count 3 an indeterminate term of 15 years to life. The indeterminate term was triggered by section 186.22, subdivision (b)(4)(B), which increases the sentence for certain gang-related offenses. The court further enhanced defendant's sentence in count 3 with an additional and consecutive 20 years for the use of the firearm (§ 12022.53, subds. (c) & (e)(1)). The court stayed this sentence under section 654.

We agree with the parties that the sentence imposed in count 3 is invalid. The jury did not find true that defendant personally discharged the firearm in count 3, only that a principal did. An accomplice to a gang-related offense in which another principal personally used or discharged the firearm is subject to *either* the gang-related sentence increase under section 186.22 *or* the additional punishment under section 12022.53, but not both. (*People v. Brookfield* (2009) 47 Cal.4th 583, 594–595.)

Because the jury did not find true that defendant personally discharged the firearm in count 3, the trial court was prohibited from imposing both the indeterminate term under section 186.22, subdivision (b)(4)(B), and the additional 20-year firearm enhancement under section 12022.53, subdivisions (c) and (e)(1). (See *People v. Brookfield, supra,* 47 Cal.4th at pp. 594–595.) Consequently, we agree with respondent that defendant's sentence must be vacated. Because part of defendant's sentence has been stricken on review, a full resentencing as to all counts is appropriate so the trial court can exercise its sentencing discretion in light of the changed circumstances.[7] (*People v. Buycks* (2018) 5 Cal.5th 857, 893.)

## DISPOSITION

The jury's true findings regarding the gang-related enhancements (§ 186.22, subd. (b)(1); § 12022.53, subds. (c), (d) & (e)(1)) are vacated. Defendant's sentence is vacated. This matter is remanded for further proceedings. The prosecution shall have the

---

[7] To assist the trial court and parties following remand, we note that, if the gang-related enhancements under section 186.22, subdivision (b)(1) are not retried or if the jury does not find them true, defendant's sentence in count 3 may not be enhanced by either section 186.22, subdivision (b)(4)(B) or section 12022.53, subdivisions (c) and (e)(1).

We further agree with defendant that, when he is resentenced, any determinate sentence must comply with section 1170, including that statute's limitations on imposing a sentence exceeding the middle term (*id.* at subd. (b)(1)–(3)) and that statute's direction to consider defendant's "youth" at the time of the commission of the offense (*id.* at subd. (b)(6)(B)).

21.

opportunity to retry the gang-related enhancement allegations in conformity with Assembly Bill 333. Defendant shall be resentenced in conformity with this opinion.

In all other respects, defendant's judgment is affirmed.


POOCHIGIAN, J.

WE CONCUR:


LEVY, Acting P. J.


MEEHAN, J.